Judge Grant and I are delighted to welcome Judge Martinez back to the Eleventh Circuit. I say back because Judge Martinez sits with us from time to time. I think I've sat with Judge Martinez a couple of times before. Judge, we're delighted that you're here to help us decide these cases this week. Welcome. I'm glad to be here and I thank you. And we have three that are scheduled for oral argument this morning, and the first is United States v. Gregory Rothwell, and I see Mr. Newman is here and ready for Mr. Rothwell and Mr. Davis is here for the government, and who do you have with you, Mr. Davis? Right, good morning. Mr. Newman, are you ready to proceed? Yes, sir, I am. May it please the Court, Luke Newman on behalf of Mr. Rothwell. I'd like to begin this morning's argument by addressing the issue regarding juror number six at the trial below. What I'd like to do at the outset is to talk about this conversation that juror number six had with originally a courtroom deputy clerk and then the trial judge, and I'd like to ask, Your Honors, to take that conversation, those revelations that occurred in the 14 or 17 pages of record that have been beaten up pretty good by the briefing in this case, and move that conversation and those revelations backwards as a mental exercise to the actual jury selection process. And Mr. Rothwell's position is that if those revelations, that conversation had occurred during jury selection, when juror number six was asked to be forthcoming, was provided with expansive definitions of a law enforcement agency, was asked a catch-all question about anything else that might have given him concern or anything else he may have wanted to disclose. There was a conference in Chambers. Yes, sir. And juror number six was there along with Judge Rogers and counsel for the government and counsel for Mr. Rothwell, and the record reflects that juror number six assured the verdict, he was prepared to deliberate with the group, and he was no longer concerned for his safety. Is my recollection of the record incorrect? That is an interpretation of the record. Obviously, my opinion, Judge, is that that would be an interpretation that's forwarded by the government. When I read that section of the record, what I read on behalf of Mr. Rothwell is a juror that's repeatedly given an opportunity to simply say, you haven't come to a decision yet, and he repeatedly then parries those overtures by the trial court and says things of nature like, we all know there's one verdict or the other. Is that wrong, that there's one verdict or the other? No, it's not wrong. But the way I read it is I read it as the trial judge saying repeatedly, almost putting it on a T for the juror, and inviting him to just say, say you haven't come to a decision yet. And the juror responding not with a yes or a no, but then inquiring back of the juror and in one line of transcript of the defense counsel about where is this individual going to be incarcerated going forward. And then in the course of that conversation, that exchange that happens in, I guess, a conference area or robing area of the courthouse, the juror additionally advises the counsel for the government, counsel for Mr. Rothwell and the trial court that he's spoken up about this issue with the other jurors. And that the other jurors have, maybe as a result of him bringing this up to their attention, have picked somebody else as a foreperson. So he's discussed this issue, his unique life experience. Wait a minute now. He's discussed his concern for his safety with the other jurors? That's in this record? That's what he says, yes. He says that I brought this up, and then they picked somebody else as the foreperson. I think he uses the term spokesperson when I brought this up. So he reveals that during the course of this, I've called it a colloquy in my briefs, that he has with the trial judge and counsel for both parties. What page of the record do you see the connection between the selection of the foreperson and his expression of fear to his fellow jury members? I can't give you the exact page, but if you look, actually my colleague from the government filed an attachment with their brief in the case, and they attached the entire, I believe it's about 14 pages of record. So it's on the docket as an attachment to the government's brief in the case. I guess what I'm asking is, I had understood that his main concern was being the foreman. Is that what you would take from the pages of the record, or do you have a different view of what his concern was? I think he has additional concerns, and I think that if you look at those, I think it's 14 pages of record in which this whole exchange takes place. I think that's borne out by those pages of transcript as well. So I have looked at those pages of the record, and my takeaway was that his primary concern was being the foreperson. So I guess what I'm asking is, which pieces of those pages specifically give you a different impression, that he had other concerns? No, those were his only, his concern was about his job status, and they put him in contact, he claimed, with jail inmates on a regular basis, or even state inmates on a regular basis. So those were his concerns, his safety concerns. There weren't any other concerns that he had. But he was expressing concerns, a juror concern for safety, in that portion of the record. There's no alternate concern that he brought up. But did you not see that his concern was potentially diminished or eliminated by the fact that he was not chosen as the foreperson? I think it was diminished or eliminated when the court told him that Rothwell would be put him in contact with him. And then, when I say that, I want to go backwards a little bit in the record and make it clear that the trial evidence that I guess caused this concern was a series of phone calls that were introduced into the record, and those phone calls were with an individual who actually was in state custody, and in the county in which this juror lived. And so those phone calls and the transcripts of the phone calls appeared to be what caused the concern, and that's what apparently brought Juror No. 6 forward with the issues that we're arguing today. Of course, this is an issue that we apply an abusive discretion standard of review, and we said in United States v. Sommer that when a district court finds that a juror is not biased, this is pretty hard. Our deference is that it's pinnacle. Are you sure you want to spend all your time on this issue? I can talk about sentencing. I can talk about sentencing. So, Mr. Rothwell had been sentenced previously to a state sentence that was more than, I believe it's almost 12 years prior to the date of the indictment in the drug case that we're here for today. And when it came time for sentencing, there was an argument about the use of this sentence that didn't qualify on its face for a criminal history point to sentence Rothwell, to classify him for the sentencing enhancement for a career criminal. And what the government did below was argue that the relevant conduct for this offense, the offense of conviction, stretched backwards, and they did so at the trial level based on a series of text messages that were located in his cell phone. Now, the text messages weren't located in the cell phone that was on Rothwell's person at the time of the search and seizure of his vehicle, and they weren't located on the cell phone that was, there was two cell phones actually located on him at the time he was arrested on this indictment. They were located in a storage unit, and in the text messages, it appears, and there was testimony at trial, a 404 testimony, that the text messages were indicative of drug activity, and you use terminology, slang terminology, not in proper English, but they use terminology that a law enforcement agent testified were indicative of drug activity back in this relevant conduct period. We said in United States v. Maxwell that in evaluating relevant conduct, you consider similarity, regularity, and temporal proximity. I think you probably have the temporal proximity, but what can you tell us about the other two factors, similarity and regularity, in the time that you have left? I would argue that there's not, there's support for a similarity finding, because in the other cases that were argued by the government in the briefs in this matter, the parties were distinct and known. These are cases where people come to court and say, I dealt drugs with that individual over this period of time, on these dates, and they also frequently have, in the cases relied upon by the government, admission from a defendant, where a defendant will say, I cooked crack every day. I sold drugs every day, only stopping while I'm in prison. In this case, we have these text messages where only one party is known, and furthermore Didn't the, I think it was the PSR, conclude that those text messages were to and from Rothwell? I don't think they did. They said that, well, the PSR says that one of the text messages uses an alias that Rothwell had used, but I think the PSR, I don't think the PSR made a conclusion as to whether or not Rothwell was a party to the text messages. I mean, I'm sure that's the government's position, that he was a party, but even if he We do know that the text messages discussed selling marijuana, right? That was the testimony, yes sir. And so, that was the 2005 conviction for selling marijuana, right? The earlier conviction that we're arguing about, yes sir, it was on June 20th of 2005. And the cell phones contained photos of marijuana packaged similarly to the marijuana uncovered from Rothwell's vehicle, right? I have to defer to the PSR on that. I know there were photos, but I don't know if those were used for relevant conduct purposes or if those were the 404 evidence that was introduced at trial. I can't speak to that. I might misrepresent something there. I just don't know that. It appears to the earlier question that the PSR stated 19 times that the text messages were either from Rothwell or to Rothwell. The PSR stated that they were Rothwell's text messages? That they were either from Rothwell or to Rothwell. Certainly, that's the government's position. Certainly, the government's position is those were Rothwell's text messages. That either incoming or outgoing text messages were either received by or generated by Mr. Rothwell. Wasn't it his phone? Well, I don't think that's established in the record. I don't think that's established in the record. The phone was located not on his person, but in a storage unit that was searched pursuant to a search warrant. Whose storage unit? Whose storage unit? The government's position is that it was Rothwell's storage unit. Certainly. So, it was a phone located in a storage unit apart from Rothwell's person, apart from his vehicle, which had been searched, apart from the phones which were seized on him at the time of his arrest. So, it appears that it was a phone located in the storage unit, and that these text messages from 2015 were then used to extend the relevant conduct period back into the 10-year window, allowing him to be classified pursuant to government argument as a career offender. Under the clear error standard that we're operating under here, don't we have to affirm if we find the district court's account of the evidence plausible? That's a pretty high bar to reach. On the sentencing issue, I've argued that there's a de novo standard because of the application of a Chapter 4 sentencing enhancement, career offender. And I've listed the cases that I believe support that when we're dealing with a Chapter 4 sentencing enhancement, such as career offender, that there's a de novo standard of review because it's been held by this court to be a legal conclusion that's reviewed de novo. With that, I see I'm in my rebuttal time, and I will sit down. Go ahead. Good morning. May it please the Court, Robert Davies for the United States. Your Honors, on the first issue, the district court did not commit an abuse of discretion by leaving juror No. 6 on the jury. The district court had an extensive colloquy with the juror. The juror said he could deliberate fairly and impartially. He had not decided his verdict. He could set his concerns aside. He said he was truly comfortable going back and deliberating. Importantly, also, the juror's tone and demeanor were a factor. And as Samore and Moran and the other cases I site hold, the district court could evaluate that, whereas you all respectfully, as a reviewing court, cannot. And based on the colloquy and the record and the demeanor and the tone, the district court did not commit an abuse of discretion by leaving Mr. C on the jury. The defendant, Mr. Rothwell, argues that also there was some error during Verdier. There was something improper about juror No. 6's answers, but there wasn't. The juror said he was not associated with the judicial system. He had not worked for a law enforcement agency. Both those answers were correct. It was not unreasonable or improper for juror No. 6 to not volunteer that he came into contact with state detainees or inmates at his job with Whatcom County Public Works. The district court did not err, let alone plainly err, by failing to remove Mr. C because of his answers during jury selection. So the district court did not abuse its discretion in Issue 1, and on that issue you should affirm the district court. With regard to Issue No. 2, the district court did not commit clear error by finding that the defendant's relevant conduct extended to and before June 20, 2015. Mr. Newman argues in his brief, and argued here at oral argument, that the standard of review was de novo, but that is not correct. This court reviews de novo whether a prior conviction qualifies under the career offender guideline as a crime of violence or a controlled substance offense, but that's not the issue here. Here the issue is whether the defendant's relevant conduct included the marijuana he was receiving for distribution on and before June 20, 2015, and this court reviews that relevant conduct finding for clear error. The law, I would submit, is very settled on that. Bennett holds that 368 F-3rd at 1356. Maxwell holds that 34 F-3rd at 1011. Another case holding that is United States v. Siegelman, 786 F-3rd, 1322 at 1332. And under clear error review, the district court did not commit clear error by holding the defendant's relevant conduct extended back to and before June of 2015. You would agree that there are three things that we look at in evaluating relevant conduct, similarity, regularity, and temporal proximity if we follow our precedent in United States v. Maxwell? Yes, sir. Okay. Now, the government agrees that there is no temporal proximity here, right? It is, but that's not that important because it was ongoing, and the cases I cite like Bruce and Davis and also Bennett. But it is a factor, and there's a two-year difference between the conduct, right? Right. It is a factor, Your Honor. It's not a dispositive factor, as the test itself shows. You also consider similarity and regularity, and the cases show. Davis, Bruce, and Bennett all show that. And what you have here is that a reasonable fact finder could find that the defendant started up his marijuana dealing when he got out of prison in April of 2014. The defendant and Remicci rented a house together along with Mr. McLemore, and they got marijuana from Mina at the house. Don't we need some findings by the district court to that effect? Did the district court find that the cell phones were his? She did not make a specific finding that the cell phones were his, but the evidence shows the cell phones were in a storage locker that was registered in his name. And the district court's ultimate findings at pages— I agree with you. The cell phones were in the storage unit, but there was no finding by the district court that the cell phones belonged to Mr. Rothwell, right? Right, Your Honor, but let me tell you why that doesn't matter. If you look at cases like Hightower v. Terry, which I don't have the side for, but it's a well-known case, this court can infer fact findings from the record. And there was a dispute over whether this relevant conduct extended back to 2015, whether he should get a criminal history point. And the district court heard from both parties. She had an undisputed PSR in front of her, paragraphs 11 and 38 through 40 of the PSR. There was no objection to. And she said, based on that, I'm finding that this was relevant conduct. Don't we look at the findings by the district court to determine whether the conduct was relevant? You do, Your Honor, and she found it was relevant conduct. And when you find that, you review her overall finding that it was relevant conduct for clear error. She doesn't have to go through each piece of evidence and say, I find this, I find this, I find this. I think if you look at her— Well, there aren't a whole lot of findings. I don't see any findings that the text messages were to or from Rothwell. That might be in the PSI, but there was no finding by the district court, was there? She did not make a specific finding that the phone was Mr. Rothwell's. This is relevant here now. I don't see that there are any findings that the text messages were sent or received by any of the same parties involved in the 2017 offense. Well, the parties involved in the 2017 offense were he's a marijuana buyer and distributor to various people. You don't know who he— But I guess what I'm asking is, Rothwell can sell marijuana in 2005 and then sell marijuana two years later, and it doesn't necessarily have to be a part of the same series of events. It could be selling marijuana with distinctive similarities, couldn't it? Of course that's true, Your Honor, but you've got to look at the specific facts and the record here. And she did make a finding that it was relevant conduct. And if the Hightower v. Terry and other cases, you infer factual findings from the record, and you look at was there evidence to support her finding that it was relevant conduct. And the key evidence is not really—the text messages help, but the key evidence is paragraph 11 and 38 through 40 of the PSR, which shows that he and Remicci and McLemore are renting a house together. They're distributing marijuana out of the house. They're getting marijuana from Mr. Mina. He's getting marijuana from Mr. Remicci to sell. He's getting marijuana from other sources of supply, including Mr. Remicci's source of supply. And, Judge Wilson, don't leave this aside. I don't want this to get lost in the shuffle. The day after his offensive conviction, the police searched the storage locker that is in his name, and they find $69,000 worth of drug proceeds. He's also driving a Jaguar. A couple of days later, he says in a phone call, which is at paragraph 30 of the PSR, Government Exhibit 9B, page 6, he says, the police hit one of my other spots from which a reasonable fact finder could infer the $69,000 they found was only one spot. So he's got a bunch of drug money that he's already saved. That supports the PSR statements that he was dealing regularly. It's a similar drug. He's dealing regularly. It's ongoing. And hopefully, as is clear from my brief, I'm not contending this is a slam-dunk, open-and-shut issue, but this is a clear, erroneous, clearly erroneous review. And a reasonable fact finder could go either way on this, and it certainly was not unreasonable. It was not clearly erroneous for Judge Rogers to go the way she did. What responsibility, if any, did Rothwell have to object to statements in the PSR that he disagreed with? Oh, completely, Your Honor. He filed document 81 as objections to the PSR where he objects to stuff, but it's later stuff that doesn't have anything to do with this appeal. He filed document 83 as another pleading he filed. Then he filed a sentencing memo. So he had plenty of time to file stuff before the sentencing hearing, and then at the sentencing hearing himself, at the sentencing hearing itself, of course he could object then, and he doesn't. He never objected. And this law, this court's law, is cited in the footnote in my brief, Diarty and Turner and other cases. I mean this court's law is just rock solid that if you don't object to a paragraph in a PSR, the district court can take the facts as true. Doesn't the comment to the guidelines say that you need a strong showing of similarity or regularity to compensate for the absence of temporal proximity? It says that, Your Honor, and you have that. You've got the same drug. It's ongoing. And really what I would ask you, I mean you've got the facts here are not super complicated. It's the drug money they found, the fact that he's driving a Jaguar, the fact that he said they only hit one of my spots, the paragraphs of the PSR 1138 through 40, and then the cell phone calls which are in the PSR at paragraph 26. I mean that's the evidence. The law is pretty clear. You just look at this and you look at relevant cases, and they're not on all fours, but they're very helpful. Davis, Bruce, and Bennett helped me. Maxwell and Ransom are very distinguishable. You put it all together, and then what you all have to ask yourself is, did Judge Rogers commit clear error with this finding? And I just don't see how she did. The clear error standard is, as you know, very deferential to the district court. I mean if there are two permissible views of the evidence, and the judge picks one of them, you affirm her. And she picked a permissible view of the evidence here, and it's correct. One last thing I wanted to mention in response to his reply brief, he cites this case, Kornig, that says, ordinarily when an indictment charges the offense occurred on a certain date, you use that date certain. And Kornig is 945 F. 2nd of 1509. That language is dicta, but before you even get to that, the Kornig court said ordinarily, so it's not a hard and fast rule. More importantly, the relevant conduct guideline, 1B1.3A2, and both circuit precedent after Kornig and before Kornig shows that relevant conduct includes all acts committed that were part of the same course of conduct. Post-Kornig case law is Bennett, which is cited in my brief. Pre-Kornig case law is United States v. Austin, 895 F. 2nd, 1362 at 1371 and 72. And U.S. v. Wilson, 884 F. 2nd, 1355 at 1357. And, of course, if there was a conflict, the earlier case law would control. And also, if you look at Kornig, the language he's citing is dicta. The issue in Kornig was whether a parole of abrogation was constitutionally valid. So, for all those reasons, Kornig does not require you to reverse the district court. You've got a factual finding by the district court. You've got clear error review. Judge Rogers did not commit clear error, and you should affirm her in this case. Thank you, Mr. Davis. We'll hear again from Mr. Newman. Briefly, Your Honor, I want to go back to the government's reliance on the PSR paragraphs 38 to 40. I reviewed these, obviously, in preparation for our argument and in briefing as well. What the information there says is it says nothing about the time frame, only referencing a time frame where an introduction was made between this other individual and Rothwell. It says nothing about Rothwell distributing, and it says nothing about that being undertaken frequently or on a regular basis. So, I feel like the government's reliance on those paragraphs 38 to 40 in the PSR is a little bit misplaced. Did Mr. Rothwell object to any of the PSR statements that the government's relying on for this decision? I don't believe he objected to those statements specifically. He objected to the use of this conviction, this prior conviction, what I'm calling the paragraph 66 conviction, to be used in the calculation of his sentence in finding him to be a career offender. Well, sure, but isn't the rule that we've talked about that the district court can rely on any facts in the PSR that are not objected to? So, what I'm asking is if he objected to any of the facts alleged in the PSR that are relevant to this conclusion. I don't believe that's supported by this record, Your Honor. I think that what he did was he objected to the use of that earlier conviction, the 2005 conviction, to the use of that conviction for enhancement purposes for the career offender issue. Well, I mean, sure, I'm not disputing that point, but that's not a fact in the PSR. What I'm asking is whether he objected to any of the facts alleged and outlined in the PSR. In terms of going to what we're talking about with these paragraphs in the PSR, no, he did not submit any factual objections to those. To make it simple, did he ever say that's not my phone? No, he never said that's not my phone. He never raised that objection. But what he did was he raised the objection to the use of the 2005 prior conviction for the enhancement, and then that created this argument that took place at sentencing about the 10-year window and the use of that particular conviction that we're here for today. Do we have any laws that require, or I guess I should say it differently, what rules do we have about the level of detail that the district court is required to include in findings of fact? How much does the district court have to say as a finding of fact to support its determination on this issue? I would think of having a ruling that was discussed earlier during the government's argument would be preferable than what we have here with the court basically saying, well, I'll back up the time frame with the finding its relevant conduct and then enhancing. But do you have any cases that say what factual findings the district court is required to specifically make versus inferring reliance on various things in the PSR? To be honest, that's not something that I've argued on behalf of Mr. Rothwell. Okay. Thank you, Your Honors. All right. Thank you, counsel. The next case is Sebastian Cordoba.